The next case on the call of the docket is Agenda No. 6, No. 124754, State of Illinois, ex rel. David P. Leibowitz v. Family Vision Care, LLC The appellant, Mr. Whitfield-Hughes Good morning. May it please the Court, Paul Hughes for Defendant's Appellants. In adopting the act at issue, the General Assembly authorized the Attorney General and the State's attorneys to bring a claim, and it authorized interested persons to bring a claim. Although much of this law was modeled on the State False Claims Act, the use of the term interested person is a clear departure from it. The FCA allows for actions by persons, but this act is limited to only those persons who are, quote-unquote, interested. The fundamental statutory interpretation question presented here is whether the term interested has meaning in the statute, that is, whether it narrows the range of individuals who may bring a lawsuit. The plaintiff's fundamental point in saying that interested is, quote, descriptive, not restrictive, is to assert that the word interested should not do any limiting work in the statute. That contention is incorrect, and we think there are at least four key reasons why interested serves to narrow the range of persons who may sue. First, one of the most fundamental principles of statutory construction is all of the words should not be disregarded, especially when they're departures from what the General Assembly has done in other statutes. Second, again, the point is the contrast from the FCA is distinct. If the legislature had wanted to model the scope and breadth of the FCA, it had that language available to it. Third, interested is such an important term that it appears in both the title of the relevant section as well as in the statutory text. To be clear, we're not suggesting that the Court should limit the scope of the statute based on the title, but that this was not some accidental use of language, but was so important it's replicated in both the statutory language and the text. And fourth, the term interested is a well-established one. Statutes often use interested to restrict the range of individuals who may bring a claim. And at the time that the General Assembly adopted the Act in 2001, this Court, in several cases and across a range of issues, had identified that interested supplies a limiting function when it modifies who is able to bring a claim in court. Once the Court reaches the conclusion that the term interested has meaning, then defendants should prevail. Plaintiffs just can't construe the statute in a way that supplies independent meaning to interested. And in fact, we really don't think they attempt to give separate meaning to that term. By contrast, we anchor the meaning of the term in this Court's longstanding construction of the statutory language, and that's longstanding interpretation and construction that the General Assembly would have been well aware of in 2001 when it adopted the language that it used here. Now, this approach is also appropriate because it accords with the statute's stated purpose of being remedial in nature, and it also avoids what we think are very serious constitutional concerns if the statute were given much broader and more expansive scope. Now, construed as plaintiff's urge, I think this would be a rather unusual statute. It would allow an uninjured person to bring a claim against one private company contending it defrauded another private company. But in that context, there's no loss to the public fist, unlike in the FCA context here. So this is not a situation, as in the FCA context, where there's a pecuniary injury that's being claimed by the State. Rather, the State's sole interest is that of a sovereign interest. And we think that when the interest is that of the sovereign and not the State's pecuniary interest is when it's especially important for there to be the role of the Attorney General and the State's attorneys in identifying the claims and the range of claims that should be brought and in the management of those claims. So to further turn to our statutory argument, interested is, of course, the critical word in the statute that's used. And we think that this word must be given a fundamental meaning. So the first step, we think, in the statutory analysis is, does interested the word interested supply independent meaning to the statute, or can we sort of somehow look over this term and look to just persons? So we think interested has to have a fundamental meaning. That comes from the canon against surplusage that we need to give intent to the words that the legislature used and not disregard those fundamental terms. The distinction from the FCA is absolutely clear, and the title proves the point. Roberts. Counsel, the appellate court looked to Section 40 of the Act that offers certain protections to employee whistleblowers as evidence that this person was an interested person. How do you respond to that? Thank you, Your Honor. Section 40 does not equate an employee with an interested person. It does certainly provide protections to those who are employees to prevent against any form of retaliation. But the breadth of Section 40 is quite broad. It protects against a range of activities, investigation, initiation, testimony, and assistance. Notably, none of those are going and filing a lawsuit. None of those indicate on the face that an employee will be the interested person. But one can easily imagine a range of situations in which an employee whistleblower aids in the investigation or the initiation, provides testimony, or offers assistance to the party who is, in fact, an interested person who brings that claim. And so the Section 40, the anti-retaliation provision, has very extensive effect and would preclude a company that is the target of one of these lawsuits from filing a lawsuit is from retaliating against any employee who shares information, either with the State attorneys or the Attorney General. An individual employee could certainly, as a whistleblower, approach the State's attorney or the Attorney General with information that could lead to the initiation of a lawsuit or assistance or provide testimony. Or additionally, an employee could approach a company or an individual who is, in fact, injured in the context of one of these claims, and Section 40 would provide protection to that whole range of circumstances. I think the appellate court was of the view that we – our interpretation would essentially shrink Section 40 to have no effect, and we just simply think that's not true. It would have very substantial effect, even as we interpret the statute. Now, that takes to another point that the plaintiffs emphasize in their brief, asserting that we limit the range of individuals who could sue to only insurance companies. And we want to be clear that that is by no stretch our position. We explained in the reply brief that there are a whole host of other individuals, in addition to insurance companies, who will qualify as interested persons. This includes not just self-insured entities that are specifically protected under some of the predicate acts that are mentioned, but also a range of individuals. So, for example, one of the individuals who would be tricked into providing services based on false representations about insurance coverage or things like that would have a range of claims to bring. And that's just one example. There are many more. Individual policyholders, if there is fraud on them, would have claims throughout all of these underlying predicate statutes that they could bring. There's a wide range of individuals who will, in fact, be injured. So we agree with our colleagues representing the plaintiffs that this is not limited to insurance companies, but it is limited to those who have an interest at the outset, that is, that they have a preexisting injury. So we think that is a pretty critical piece for understanding the statute. But that the fact that the statute does give only one example of what an interested party is, is an insurance company, that that is a prototypical injured party, that  is identifying the range of individuals who do, in fact, have direct injury and are not someone who is effectively a volunteer, who may have some information and want to bring a claim, but doesn't have a personal stake at the outset of the case. Now, I think the plaintiffs also suggest the argument that if an individual meets the other requirements of the act, that that renders them interested. But that really does negate all meaning of interested, because then the statute would be the exact same if the range of individuals who could sue are persons, regardless of interested persons. The word interested, under that interpretation, would do absolutely no work in the context of the statute. And we think that's where there's a fundamental problem. And interested is not just a sort of random word that the General Assembly chose. Interested is a longstanding word that's been used throughout statutes to identify a subset of individuals who, in fact, do have injury. We point at the Court, we think it's a very important line of cases. This is the underground contractors, and then several cases that this Court has subsequently decided, citing back to underground contractors, to understand what interested means in the scope of the Declaratory Judgment Act. But that's far from all. The probate laws, the Dead Man's Act, we list those in the brief, and it's a consistent term of usage. Now, one point that some of the amici made is they pointed to other things, like the Classification Act, for example, in the Employment of Illinois Workers on Public Works Act, trying to suggest that interested could be used more broadly. But what's notable about those acts is, first, when they define the interested, it just is self-referential and turns back to saying somebody who's interested. So it doesn't suggest that there's a broader interpretation. But there's very clear decisive evidence in those acts that the cause of action in both of those acts are So those acts are consistent with all of the range of civil causes of action that the General Assembly provides that are limited. For example, the State RICO offense, as well as the Illinois Consumer Fraud and Deceptive Business Practices Act, all of the civil claims, civil causes of action under these acts are tightly limited to those individuals who have their own injury. They have a basis independent of a sovereign injury to assert a claim for standing. We think that, again, what's fundamentally missing here and the basis of what the General Assembly did was clear in the language that it used. My colleagues also point to the floor statements identifying that individuals can sue. And I just want to be clear, we don't deny that individuals can sue, because there are a range of individuals that can, in fact, be interested. Much has also been made about this act having been modeled on California legislation. We don't think that truly moves the needle here, because none of the legislative materials in California really shed any light on this interpretive question. But more than that, none of this material was put before the General Assembly. And what we know what was before the General Assembly was the text of this particular legislation and how this Court had understood the use of the same terms in other analogous settings. We think that's the best evidence of what the legislature intended. Again, the colleagues have focused pretty substantially on an intermediate California court case, Alziat. Again, that was not a case that subsequently postdated the General Assembly's enactment of this legislation, so it certainly couldn't have borne on the legislative intent that's at issue here. But most critically, the argument that we're advancing, that the role of the statutory term, interested, simply was neither argued nor briefed in that case. And so given the Court didn't have the argument that we're presenting to this Court about the limitation that interested places, we don't think that out-of-State authority has any substantial probative weight for how this Court should approach the case. Additionally, when we look beyond Section 40, as Your Honor pointed out, my colleagues also look to Section 25C, which is the provision that identifies certain additional shares that a plaintiff may receive if they've paid out money. There are a range of circumstances that we've explained for attempts and conspiracies and third-party frauds and all sorts of conduct in which an injured person who's injured and can properly bring suit under the Act will sue a defendant who they did not directly pay money out to. So 25C also continues to play a very substantial role in the context of this statute as we interpret it. Now, if we were incorrect about that statutory argument and the word interested doesn't impose any restriction or restraint on the range of individual who can sue, we think that would then lead to a substantial constitutional concern under Article V, Section 15 of the State Constitution that limits the role of representing the State to the Attorney General. Now, we appreciate that our colleagues rest heavily on this Court's decision, Skakidi, looking to the State False Claims Act. We think the critical distinction here is that that case in the FCA addressed a pecuniary interest injury to the State where the State is acting in a capacity that is equivalent to civil parties and where civil parties can assign a claim for their pecuniary damages from one to another. An insurance company, for example, that's interested could certainly assign out claims that it has for damages against third parties to another who may want to vindicate those rights. So the nature of the controls that are appropriate and accord with Section 15 of the Constitution, ensuring that the Attorney General has the appropriate common law duties that accord in that context, in the FCA context, with pecuniary injury, we think are markedly different from the range of controls that are necessary when what the State is asserting or the claim is asserting is that of a sovereign interest, that is, protecting the public at large and not protecting the public fisc, where the State is acting in a capacity that's equivalent to that of a private party. And the this Court's decision in Lyons, I think, is especially instructive on this point. In Lyons, the Court explained that, quote, the Attorney General, as an elected representative of the citizens of the State, is responsible for evaluating the evidence and other pertinent factors to determine what actions, if any, could and should properly be taken and what penalties should be sought. What I think is important about this passage in Lyons is it equates the importance of the Attorney General to the Attorney General speaking on behalf of the people as an elected representative of the citizens. The need for tight control by the Attorney General is enhanced when the action is representing the sovereign interest and the sovereign injury to the State, as opposed to when the State is acting in more of a private party capacity, as I described, with pecuniary interests. So we think that is a very fundamental reason why Section 15 would not permit the transfer of the State's sovereign injury from the State to an uninjured private relator. And, again, that's what makes this case quite different than what this Court held in the Scachitti decision. But turning back again, we think the Court need not reach these difficult questions under Article V, Section 15 by just a straightforward understanding of the text that the legislature used in adopting this Act, giving interested its plain, ordinary meaning, that meaning that has been given throughout statutes that the General Assembly has adopted will resolve this case and avoid the, I think, would be a very difficult situation to have far-reaching effects and raise quite serious constitutional concerns. I'm happy to take any more questions, Your Honors, or reserve for rebuttal. Thank you. Thank you, Mr. Hughes. Mr. Weisshohn. May it please the Court. Good morning, Your Honors. I am Charlie Weisshohn for the Whistleblower Relator in this case, suing on behalf of the State of Illinois. And we are here to address two questions regarding the Illinois Insurance Claims Fraud Prevention Act. And the first question is the issue of statutory interpretation. And that is, when the legislature chose to include a ketam provision in this Act, who did they intend to authorize to bring suit? And the answer is, anyone with information can bring suit to help the State fight fraud. Defendants try to read into the statute a limitation that requires a personal injury by the relator. And that is not what the legislature wrote. They did not write a private right of action for an injured party. That's not what this statute is. It is a ketam statute that, by definition, involves the interest of the State asserting the rights of the public and harnessing the power of a whistleblower relator to do that. Defendant's interpretation would turn the words interested person into a loophole and would effectively limit these claims to insurers. It writes the ketam provision out of the statute. And as to the constitutional issue, there is no doubt that the legislature has the authority to pass this statute. The General Assembly can pass any law not barred by the Constitution, and no constitutional provision prohibits this statute. It is constitutional under the direct application of this Court's case, Schettigy v. UBS, that upholds the ketam mechanism under Illinois law. And so to address the statutory issue first, there is no doubt that this statute authorizes individuals with information to sue. If the key provision, interested person, is limited to insurers, then Section 15, interested person including an insurer, is redundant. Then Section 40, about employee relators, would make no sense. Then Section 25i, that excludes relators who planned the fraud, would never apply. Read as a whole, there is no other way to read the statute. It is unambiguous that individuals can sue. And the dispute here is that defendants want to add a requirement that the relator was personally injured. That personal injury requirement is wrong. It makes no sense and cannot be reconciled with the language of the law. It is antithetical to a ketam statute, a phrase notably opposing counsel didn't mention once in his argument, because he's hiding from the obvious words on the page that this is a classic ketam law. It is not a private right of action for insurers. They have plenty of remedies already. They can sue for triple damages already under Section 10.5e. That was written for insurers who were harmed. They didn't write a law here for insurers who were harmed. They wrote a ketam law because what the government needs, what the insurers need, is the information relators possess. And that's the problem the legislature was trying to solve here. Now, defendants insist in their briefing in here today that they, too, will let individuals sue. They have to, because the law is unambiguous. But if you look at the examples they cite, it reveals the absurdity of their position. Right? They point in the reply brief to a self-insured entity, sole proprietor suing because they were defrauded. But that's just an insurer suing as an insurer. It doesn't reconcile Section 15's redundancy. It doesn't deal with the employee-relator retaliation provision section. Then they point to the policyholder. They mentioned it again here today, citing the Metz case, who was subject to a false or fraudulent appraisal. But, Your Honors, that doesn't violate the Illinois Fraud Prevention Act. It's based on the Metz case in California that's part of the California Penal Code, Section 550, that we don't have here. They're so grasping at straws, they point to a mistake that could never even be brought under this law. And then they point to the patient, perhaps a patient where the doctor was paid a kickback and say, well, if the patient paid a copay, then they can sue. Right? That's the personal financial harm. But if there's no copay, then the patient can't sue? How does that make any sense? The copay of the patient doesn't change the State's interest. It doesn't change the State's harm to the fraud. It doesn't explain how the patient is going to have any useful information about a kickback. And more to the point, their rule, Your Honor, would say that the real whistleblower in that situation, the person who worked for the doctor and saw all the kickbacks, the insider with the information, maybe even documentation, that person can't sue? That is the problem they cannot avoid with their argument. They – it should not matter whether lawyers can imagine a handful of hypothetical individuals who meet their definition, because the question is who the legislature intended to and who they wrote a statute to authorize to sue. And they cannot explain that. Sotomayor, why did they put interest in person rather than just person, if that's correct? Your Honor, that's how they described the relator as the person with the information. And that touches on a key problem with defendants – with the opposing side of this argument. As they said today here, and they're fatally wrong, the legislature, they claim, was writing in contrast to the False Claims Act or referring to the probate code or some other idea. They're grasping for some meaning of the word interested that serves their purposes. But we know that's not true. We know where the words came from. It's undisputed in this case. These words came from California. They were copied word for word from Section 1871.7 of the California Insurance Code. Defendants admitted it below in the appellate court. They put it in their papers. The legislative history is clear. The floor statements are clear. The task force that wrote the report and that report was before the legislator is clear. You can put the laws side by side. It's not a deviation from the False Claims Act. It's a copy of the California statute. And we know that California, their courts, don't require a personal injury either. The Heb case said it. This is a QETAM statute. By definition, relator does not need its own personal injury. The California courts are unanimous on that point. They say, oh, Heb was a more recent case, but they're interpreting the same language and the same law here, and the California Supreme Court denied review in that case. Strassman case says the same thing. No other California case has ever said otherwise. And if there's any doubt, just this year, in March, this California Supreme Court in Kim v. Raines said it again. In a QETAM statute, and there's no dispute we have a QETAM statute, the State can deputize anyone it wants to work with and under the control of the Attorney General to assert the State's interest, because that's what this is about. This is not about an insurer getting an additional remedy. This is about the public harm of insurance fraud that everybody pays. Consumers pay billions of dollars for fraud every year through their insurance premiums. The State, as the Taxpayers Against Fraud amicus brief highlights, the State spends over $100 million a year dealing with 100,000 complaints of fraud through fraud bureaus. It's a massive problem. And yet in Illinois, we don't have a fraud bureau, right, because the legislature wouldn't create one. What they did instead, maybe because they didn't want to pay for the State agency or additional funds, they created this QETAM statute, because it's a more efficient and effective way to harness the power of individual relators to help the State fight fraud. You can look just to the statute. You don't read a word in isolation. You read the statute as a whole in light of its context and purpose. And there is no sensible reading of this statute that excludes what is truly the prototypical relator, not an insurer. If an insurer knew it was being defrauded, it could sue. The prototypical relator is the whistleblower with insider information, like my client, who was told to lie to the insurance company by her employer. If that person can't sue, you have written the QETAM statute, or they have written the QETAM provision out of this statute. It cannot be what was written by the legislature. And so the language is right there in Section 15. The relator is the person with the, quote, material evidence and information of fraud. That is who can sue, and that is what this statute authorizes. And the question then becomes, under the Constitution, can they do it? And there is no doubt. The legislature can pass any law not prohibited by a provision of the Constitution. We presume statutes are constitutional. And the defendants do not and have not identified a provision of the Constitution that bars this law until now. Today, they stood up and said this is about Article V, Section 15. That wasn't the challenge they brought below. That wasn't the basis in the trial court, right? They raised an idea about the assignment of standing, and for good reason, because the Article V challenge is a nonstarter. It's foreclosed by sketchity. The Court – this Court already considered that very challenge to a QETAM statute. And those procedures under the False Claims Act are indistinguishable from this case. The relator sues under seal. The attorney general controls the litigation. The attorney general can intervene or not intervene. The attorney general controls the case either way. They can exclude the relator from discovery. The attorney general controls settlement. The attorney general can dismiss the case. The Court has looked at this issue, and they've looked at other setups. They've said, you know, there are different procedures. Sketchity says, you know, Article 20, that wasn't good enough. But this, this set of procedures about QETAM litigation is sufficient to meet the under the effective control of the attorney general. And so there is no worry about runaway, rogue criminal prosecutors, as they like to suggest, because this isn't a criminal case, right? There is no one going to jail. There will be no criminal record. There is no criminal procedure. By definition, a QETAM statute is an action, a civil action, for a penalty. That's what this Court said in Sketchity at 494. And by definition and requirement of the Constitution, these claims will always be brought under the control of the attorney general, and only then when authorized by the General Assembly, right? We know from Sketchity there is no common law QETAM action. You must have the authorization of the legislature. They try to distinguish Sketchity, Your Honors, on this idea that the State's interest is different, right? Oh, they're suing under their sovereign interest instead of their fiscal interest or a harm to the fisk, as I believe they said it. But that's not relevant to the holding of Sketchity. Sketchity says these are actions for civil penalties, not actions for damages. Relator, by definition, has no standing. That's what it means to be a QETAM statute. And yet they can still sue as an assignee of the State, the State's right to bring suit. The Court didn't say the State's right to bring a suit for damages. And they rely on, you know, Sketchity relies on Vermont agency, which the parties talk about in their briefs as well. And as we lay out, that doesn't turn on a damages claim or a harm to the government fisk either. The courts that have looked at Vermont agency recognize that there are, in fact, two bases for government standing, the sovereign injury and the proprietary injury. They're both injuries, in fact. They're both sufficient for standing. They both can be assigned to the relator. And that's what courts that have studied Vermont agency have said. Sketchity is consistent. Federal Circuit looked at these very arguments in the Brooks Brothers case about another QETAM statute that had no impact on the government fisk, and they said that's okay. There's no limitation. They couldn't find any limitation on the State's right to use a relator whistleblower in this way. And, in fact, the premise that Sketchity and False Claims Act claims rely on damages to the government is wrong in the first place, right? This isn't about a government loss. The False Claims Act provides an action for penalties. That doesn't involve government damages. We know in the Bunk case and others we cite that that's constitutional. The premise that these cases are somehow limited to damages claims, it's something they have invented out of thin air. The legacy of QETAM statutes is long. And this Court should not be the first Court to invent some kind of limitation on the authority of the legislature to use a QETAM statute. So long as there's a statute and the General Assembly signs off, so long as the Attorney General controls the action, as the Illinois Constitution requires, this is a valid law. And, in the end, Your Honor, defendants' attempts is quite clear. They're trying to write this law out of existence. Their narrow statutory interpretation makes no sense. It cannot be reconciled with the language of the law. It's a QETAM statute that only functions if those with information can bring claims. And this Court should not invent a new limitation on such claims that are constitutional under the Constitution and under Skagiti. The legislature had the power to write this and pass this law, and it should be upheld and the district and the appellate court affirmed. Thank you, Your Honors. Thank you. Just a few brief points. To start with the statutory argument, I think the fundamental issue is that plaintiffs cannot address the problem that under their construction, interested persons means the exact same thing as persons. The word interested does no work at all in that construction, and it can't simply be a reference to the other limitations or the kind of range of information that one would have to bring a claim. Because, again, then the statute would be the exact same if the word was persons and not interested persons. To give meaning to the legislature's purposeful use of the term interested, there must be a limiting function that that term provides. And if there is a limiting function, I think defendants prevail because plaintiffs don't even attempt to suggest that the word has a limiting function in the context and the purpose of the statute. So, again, basic statutory principles, interested must have meaning, and if it does have meaning, if it serves as a limitation to the category of persons, plaintiffs are outside the statutory limitation and are simply not who the statute was written for the private cause of action. Now, second, plaintiffs assert, again, it's central to their argument that individuals can sue, and we agree with that. We've said that quite clearly in our brief, that we agree that individuals can be injured quite often by insurance fraud. My friend's claim that our reliance or citation to a California case is misplaced I think just overlooks that Section 10.5a1 is quite broad in this State, and it applies to insurance fraud of all sorts. An individual who is a policyholder who is the subject of fraudulent claims, either fraudulent evaluations or a fraudulent submission to an insurance company by a third party saying someone was injured or something along those lines, that would then injure the policyholder, would be injured under the broad insurance fraud claim of 10.5a1. And so individuals would have a range of claims that they would be able to assert as we fully understand the Act to allow. My colleague also cites to Section 10.5e and the enhanced damage provision there. To begin with, this was enacted many years after the legislature enacted the acted issue here. So 10.5e's provision for enhanced damages is not a particularly compelling basis to understand the General Assembly's use of the term interested persons several years prior. But beyond that, it's, I think, completely consistent to understand why there's enhanced damages in 10.5e consistent with the Act, because this, what the Act does is it allows those injured persons not only to bring their own claim, but also to harness the power of the State and to provide information to the State to effectively litigate side by side with the State to get both their private claim as well as the injury that they themselves have suffered litigated. That, though, is by no stretch an indication that the Act has no limitations and that the term interested should be disregarded in its context. Again, the pointing to the California cases is just not especially helpful for the plaintiffs, because none of those cases, not one, actually has the statutory question that we've put to the Court, which is what does the term interested persons mean in the statutory context. So, again, what my friend is pointing to is just various dicta in those cases that don't actually have a direct holding on what interested person means in context. Now, moving to the constitutional limitations, our briefs have been clear throughout that the reason that there is a lack of standing is because there can't be an assignment of the State's interests from the State to uninjured private persons. The reasons that we've always identified, and these are the reasons that exist in the cases that we've been citing consistently from Bryslin to Lyons to Rifkin to Schikiti, is Section 5, Article 15, or is it Article 5, Section 15 of the State Constitution. That's clearly been the basis from the start of our argument that there's a lack of standing here because the sovereign injury is not one that can be assigned from the State to uninjured private individuals. And, again, plaintiffs, I don't think, have a strong answer to the question or the point of that there's an enormous distinction when the State is acting in its pecuniary capacity as akin to any private party and the nature of assignments that are allowed and understood at common law, as opposed to the nature of the sovereign injury that occurs when the State is acting in its capacity as law enforcement, that is, to benefit the public at large and not tie the direct responsibility or the direct claim to any specific finding of harm. I think it's important to recognize that the claims of harm here, it's never been alleged or anywhere in the complaint, nor is there any suggestion that the claims of harm here have anything to do with a measure of injury to the public at large or the public fisc. Rather, these claims are necessarily, because they are completely divorced from any sort of real-world injury, have to be the kind of criminal penalty or punishment here that the State is trying to inflict. And that's where, used in this way, this Act completely steps away from the remedial nature of it that is directly written into the statute and becomes a mechanism for punishment. Used in that way, that's where the Section 15 argument is incredibly important, because, as this Court has said in Lyons and elsewhere, when the Attorney General is exercising the sovereign authority of the people, that's when it's critically important that the Attorney General has the direct control over the action to be able to make the determination as to what is in the people's best interests. That is lost when an uninterested volunteer is able to step into the shoes and take on this critical law enforcement responsibilities. Now, finally, my colleague points to the Federal Circuit's decision in Stauffer, it's the Brooks Brothers case, addressing the false marking statute. I think this argument is strained for a few reasons. First, of course, it said nothing at all about the State, the Illinois constitutional argument that is essential to our constitutional standing point. So it just doesn't have much to say there. But more importantly, on that end, Amici in that case had raised a take-care argument, which would be effectively the Federal equivalent to the kind of argument that we're making from Section 15. The Federal Circuit expressly declines to address the constitutionality of that argument because it wasn't briefed by the parties. So not only does that not staffer, not address the Illinois constitutional argument that's the basis of our second claim here, but it expressly declines to assess the constitutionality of the action at issue there because it wasn't indeed raised. That's the argument that we're putting to the Court here that is just simply not controlled by Stauffer and certainly not controlled by Scachetti because of the distinction of the nature of the action. Again, this is not a claim for pecuniary damages or loss to the State FISC, but it's rather the State acting in its sovereign capacity to protect the public at large. But to return to where I started, we think the easiest and most simple way to understand this case is that interested persons must have meaning. We think the General Assembly used the term interested for that to have a limiting function. We've supplied the sole limitation, and looking to underground contractors is where this Court, I think, should begin and end its analysis in this case. That establishes the General Assembly knew that it was incorporating an injury requirement into the range of individuals who could sue. That would make this accord with effectively every private cause of action the legislature has adopted. We think that's the express intent of the legislature in using this specific language, and that should govern the Court's decision in this case. Thank you very much. Ginsburg. Case number 124754, State of Illinois v. Family Vision Care. It will be taken under advisement as agenda number 6. Thank you, Mr. Weisshoff, for your arguments, and Mr. Youth for your arguments this morning.